Good morning, Honors. David Beck, I represent the plaintiffs' appellants and the employees in this case. May I have permission to use a small chart? Sure, as long as you've disclosed it to the other side. Or if it's in the record. What's that? I have not seen the chart. All right. Is it in the record? No, no, no, it is not. Okay. Well, make sure your opponent can see it. Okay. I'll actually give him a copy. Okay. I think I now understand what you're trying to direct my comments. In this alter ego case, of course, alter ego liability exists if we have lack of respect of the separateness of the corporation plus either fraud or injustice. And then the question becomes who may be liable for the alter ego liability. And that would be a person that either influences and governs the corporation or was an actor in the fraud. And in this case, the appellants allege two instances of fraud. One is where Mr. Arntz said that he would match the sales if the California sales staff would stay on the job basically without pay and keep on working and generate sales, then he would match those sales with contributions up to the point where the salaries and commissions that were owed could be paid. The other is that there are the employees all had written employment agreements, and the company even made numerous references to them in correspondence. But then when this case came along, all of a sudden they're repudiating those agreements despite acknowledging them in writing earlier, which itself could be a separate instance of fraud. One wonders if they ever intended to pay him in the first place. The appellees are challenging the lack of respect of the separateness of the corporation. They have no evidence or challenge even in their paperwork about the no matching contributions fraud. They have no documents or anything that disputes the repudiation of the contract fraud. They do allege that there was no injustice. They do not deny that Mr. Arntz influenced the government corporation or that he was an actor in especially the no matching funds fraud. So what I'd like to do is direct my comments to the appellee's response to the lack of separateness argument. Before you do that, perhaps you could put it into context for me. Before the magistrate judge, both parties were citing federal law, and the magistrate judge used federal law in making the determination. The problem I have with it, this is a diversity case, and I don't see any way that federal law is appropriate. It seems to me that State law is appropriate and that we are off on the wrong track. Can you give me some help with that? Well, I – here's what I can say. The – you're correct. The federal law was used. That's what I cited, and that's what the appellees have used. I know both sides have used it. I had to do my own research. But go ahead. Yeah. The – I cannot give you a case, but what I do know is that a number of cases have said that federal law and State law in this case are, for all practical purposes, the same. Is the California Supreme Court said that? The California Supreme Court uses a slightly different language. It speaks of, I believe, a lack of unity or a unity of interest, I should say, a unity of interest, which is other language for the lack of respect. In other words, the California Supreme Court says a unity of interest between the corporation and the – and the shareholder or the defendant, the individual defendant, and then it goes on. You made an analysis as to which has the greater burden for you? Federal law or State law? Yes. I have not engaged in that, no. Would you be surprised that State law seems to have a greater burden? And if so, how can you help us to decide the case by – by arguing Federal law? Well, I think the – the argument is still essentially the same, which is that the question is whether there was that unity of interest or not, or the way the Federal courts say it, the lack of respect for the separateness of the corporation or not. And beyond that, no matter which words you use there, beyond that, the question is – becomes one of fact. Okay. Go ahead. Well, on the unity of interest question, what percentage of the stock did Mr. Arntz own? It – it was something like 22 – 2.2 million shares out of 12 million or something like that. So 16 or 17 percent. It was under 20 percent is my recollection. I think that's correct. So you have other investors in this case. It's not a closely held corporation, right? I don't know if it's close – no, I think it is not. You're correct. It's not a closely held corporation. So it's a far reach, I think, generally, or you've got a tough uphill battle to find a unity of interest when you have a minority shareholder in a non-closely held corporation to show that there is a unity of interest, don't you think? Well, I think the – I think the questions are whether – and I think this is true in the State court as well – whether the person we're speaking of, as long as they own one share – and there are Supreme Court cases on that – as long as they own one share, then the question becomes, under the State words, one of domination and control. All right. Well, what's the difference, say, the President of General Motors who owns shares of stock in General Motors? Why isn't that President equally liable for every – all the employees in General Motors, under your theory? Well, I think it's because at General Motors, I presume that they actually have shareholder meetings, and the shareholders elect the directors, and then there's a directorship, and then they have votes. Yeah. I grant you the lack of formalities here, but, I mean, and conceptually, if you're just arguing unity of interest, doesn't the same logic apply? Well, the – what we have in this case is Mr. Arntz influencing and governing the corporation, directing all aspects of it, under a framework where they don't even have shareholders meetings. I mean, they all said there have been zero shareholders meetings. And so what we have is Mr. Arntz, for example, removing a guy named Dodd from the board, removing Tadlock from the board, removing Tadlock as an officer, putting Regalus on the board, putting Regalus in as an officer, having Wirtz remove himself from the board, all without even a single shareholder meeting, and I guess there were notes of one director meeting, but no directors meeting minutes. And it is the shareholders meetings and the directors and the directors meetings that are the hallmarks of what a corporation is in terms of how it's distinguished from a sole proprietorship. But this corporation acted completely as a sole proprietorship for Mr. Wirtz. And so the – as a practical matter, there were, I think, maybe 30 or 35 shareholders or something like that. The vast majority of them had very small amounts, and I take – I'm getting this from the stock ledger, which are part of the excerpts. But there were really only four or five people that had – that engaged themselves in the business here. And – You've got about a minute – a little under two minutes left. Do you want to save some time for rebuttal? I would, yes. Okay. Thank you. Thank you. Thank you. May it please the Court. My client, Mr. Arntz, is a gentleman who invested $750,000 in a business, has not seen one cent of it coming back, and now is getting sued for the trouble. I would submit to the Court that this is – and was – a perfect candidate to invoke the Celotex case, as the trial court did, because this is not a case where there's any showing of fraud in the foundation of the corporation. There's no showing that my client profited by anything that was going on. There's no showing of anything that would lead to the conclusion that there needs to be a trial on this matter. I would submit to this Court, as I submitted to the trial court, that if the standard that the plaintiff and appellant is propounding on this case were to take place, you simply couldn't do business in Silicon Valley. This corporation was funded initially to the tune of $2 million-plus. There were an additional $700,000 in loans that were extended during the life of the corporation. My client didn't get anything back. The case law which we cited to the Court is such that if you don't think that the funding is adequate, you have an obligation to come forward with proof, and that's proof and not allegation, that some other funding would have been required. Again, that's why we're invoking the Celotex line of cases, because there was absolutely no demonstration by the appellant on this case of anything other than that $2 million being adequate. The amount of respect that was afforded by the corporation was that that follows both the federal and the state court law. It may not have been perfect, but it certainly was there. There were bylaws. They were attached to the Articles of Incorporation. But the bylaws, were they signed and produced? They were adopted within the Articles of Incorporation. You didn't produce any signed? They weren't signed. They were adopted by... You're looking through this, and just the corporation did not observe any of the formalities. I'm sorry? The corporation just didn't observe the formalities you see in a generally C corporation as it's usually run. The minutes or no? Shareholder meetings, no. The formalities were in line with what they call the informality in the case law. In other words, plaintiff has alleged that there were no stock shareholder meetings. If you look at the record, that's not true. We attached copies of the minutes of one of the shareholder meetings. Those minutes were not kept except for that one set of minutes, but we gave what we had. That's why they call it formalities. I mean, that counts against you. It's not definitive, but it certainly counts against you in this case. And would it have been according to the textbook? We conceded both here and to the trial court that it may not have been textbook, but it certainly did not meet the other two thresholds which are required, which are, number one, that there be a showing that there was an injustice. There's simply no showing here it was an ongoing corporation. It was entering into contracts. It was doing just the sorts of things that you would expect a corporation to do. There's no showing of fraudulent intent. There's every showing that my client was at least as much a victim as the plaintiffs in this case. He appears to have lost all $750,000 of his money. What's the status of the corporation now? I'm sorry. What's the status of the corporation now? The status of the corporation now is that it's doing some business. The status of the corporation beyond that is silent in the record, which is another thing. Right. Well, I understand. But I just don't. It's not being liquidated. It's not a bankruptcy reorganization. It's incorporated. It's doing business. The volume of business I can't speak to. There's absolutely nothing in the record on that. And absolutely no showing by the appellant on this case that the corporation itself cannot meet the obligation that they're seeking under terms of the lawsuit that they've brought here. Those are my points. The person that I'm representing has been caught up as an unfortunate victim. According to sell attacks, he's entitled to summary judgment. And unless the Court has questions, we'll rest at this point. Do you concede that Federal law does not apply, that State law applies to this case? We briefed both questions, both at the trial level and here. And I would agree with my opponent on this case that the differential in terms of a pivot seems to be under State law the standard of unity of interest. And answering Your Honor's question from before, I would think that's something of a higher standard than under the Federal standard. There's no unity of interest here because Veriscape's going in one direction and my client is going in another, seeking himself to recoup $750,000 that he appears to have lost at this point. What is your position, though? Does State law apply or does Federal law apply in this diversity jurisdiction case? Well, I think that the cases that we cited talked about a Federal common law having come up in this context. I think my question was rather specific. What law applies, State or Federal? Let me answer directly. I think given that it was diversity of citizenship, I think the standard rule would be that California State law would apply. I also, as did my opponent, briefed both Federal and State law because of the argument of the Federal common law that's arisen in this case. Well, the magistrate judge took the position that Federal law applied, and she cited the magistrate judge cited mostly Federal law. It strikes me that perhaps we need to take another look at the case and apply the proper standard, although that, from my initial review, doesn't indicate that's going to be of detriment to you. The State law seems to be a little more strict with setting aside corporations. In this case, do we need to send it back for the magistrate judge to look at it under the proper standard? I don't think that, given the record that's been developed, there's any requirement of that, because since both Federal and State law were briefed, there's nothing to indicate that there would be any different result if it were to apply State law versus Federal law. They thought this was a summary judgment case? That's correct. And I just wondered whether or not we needed to send it back to see under the new view of the law whether the magistrate judge would still consider that there's no material fact and dispute under a different analysis using State law. I don't see where that would be provident, given the fact that both Federal and State law, as well as Delaware, were briefed. No, but the question is not whether who briefed it. We review not your briefs, but the decision of the magistrate judge in this case. And so I think Judge Wallace's question is, if we conclude that the magistrate judge used the wrong analysis, our normal procedure would be send it back, have a new analysis done, and then go from there. Our question to you is, why or why should that not be done if we conclude that State law applies? Let me not overstate my case. I would need to review the trial court's opinion once again, but I believe that both State and Federal law was cited by the trial court. All right. Thank you, counsel. Thank you. About a minute 40 for rebuttal. Yeah. Thank you. I'd like to respond four ways. Counsel mentioned here, as he did in his brief, that under the Selatex case, and he makes the analogy here, that there was no fraudulent intent at the forming of the corporation. But, of course, this Court in 1989, the Board of Trustees, the Valley Cabinet case, said from now on there's no distinction between forming the corporation with fraudulent intent or subsequently using the corporate form to do a fraud. So I would submit that the entire fraudulent intent in the forming of the corporation that's why that bottom thing is there, has no applicability here. The second point I would like to make is counsel said that in Silicon Valley, if this Court were to find the respondent liable in a case like this, that they'd all be liable, anyone who owns stock or is an officer in a corporation. Not true. It's only people that have influence or governorship of a corporation or are actors in the fraud. The third point is he said there were shareholder meetings. At Excerpt 104, 105, Regulus said none. At Excerpt 114, Arntz, his client, said none. At Excerpt 118, Tadlock said none. I mean, none. Not that there was one without minutes, but none. And the last point I'd like to make is with regard to undercapitalization. The Seymour case and the Laborers' Cleanup case both say that undercapitalization is the most important, and they use those words, the most important or more importantly, they use those words, factor to look at when you're analyzing the lack of respect. In our case, there was a little over $2 million raised, but more than half of it was by loans, and the second round of initial funding was completed in September of 2001. Two months later, in November of 2001, there were e-mails being issued out, we have no money, operations unable to pay bills, we're unable to pay expense reports at this time, or we are low on cash. Then it was two months after that, in February of 2002, that my clients were hired by the corporation. On top of just those kind of comments, if you look at sealed exhibit number 30, where the balance sheet is, you can see that after only one year of operation, they were $934,000 in the hole, and it got worse in 2003 and worse in 2004. So you -- I think we've read your brief, and we understand the facts you just recited to us. Can you tell me, in these facts, whether there's any indication that Mr. Armes performed what we would consider a fraud, a legal fraud? Yes, sir. Thank you. The direct fraud that he committed was saying to the California sales staff when they were not getting paid and they wanted to get paid, he would say to them, stay on the job, and I will match the sales you make with contributions so that your salaries and wages and commissions can be paid. They did stay on the job. They made sales. Sealed exhibit 33, basically what that is, it's a big spreadsheet, and I broke it down into eight and a half by 11 pages, but the last two pages show the sales to Pfizer and Unilever and Bank of Montreal, and they are very substantial. They are, you know, in excess of $2 million when you add them up and are right around $2 million. You didn't sue him for fraud, did you? Did you sue for fraud? That is a cause of action. Okay. Thank you, counsel. Your time has expired unless there are further questions from the panel. Thank you. The case, sir, will be submitted.
judges: Wallace, Thomas, Bybee